FRANK HASSETT, APPELLANT, v. ST. MARY'S HOSPITAL ASS'N, A NEVADA CORPORATION, AND DR. JAMES GREEAR, RESPONDENTS.

No. 6152

December 22, 1970          478 P.2d 154

---

*Don V. Purke* and *Virgil D. Dutt,* both of Reno, for Appellant.

*Goldwater, Taber, Hill and Mortimer* and *Julien G. Sourwine,* both of Reno, for Respondents.

## OPINION

By the Court, MOWBRAY, J.:

Appellant-plaintiff Frank Hassett has appealed from two orders of the district court dismissing his complaint for damages that he had filed against respondents-defendants Dr. James Greear and St. Mary's Hospital, both of Reno. The orders of dismissal were granted under the provisions of NRCP 41(e), which reads, in part:

*"(e) Want of Prosecution.* The court may in its discretion dismiss any action for want of prosecution on motion of the defendant and after due notice to the plaintiff, whenever plaintiff has failed for two years after action is filed to bring such action to trial. . . ."

We affirm the orders of the district court dismissing the complaint against both respondents-defendants.

1. *The Facts.*

On March 3, 1965, Dr. James Greear removed a cataract from Frank Hassett's right eye. The operation was performed at St. Mary's Hospital in Reno. Hassett, after the operation and while recuperating in the Hospital, scratched his eye while attempting to relieve the itching resulting from the operation.

Two years later, on March 2, 1967, which was 1 day before the statute of limitations would have barred this action, Hassett filed in the district court a two-count complaint seeking damages from the respondents-defendants for their alleged negligence in caring for Hassett, which he claimed caused him to suffer loss of sight in his right eye. No attempt was made to effect service on Doctor Greear. Two years later, on March 4, 1969, Doctor Greear, without yet having been served with process, moved to dismiss the complaint for want of prosecution under the 2-year discretionary provision of NRCP 41(e). The motion was granted, and the complaint against Doctor Greear was dismissed on July 22, 1969. Thereafter, in October 1969 (2½ years after the complaint had been filed), the Hospital was served with a copy of the complaint and summons. The Hospital then filed a 41(e) motion to dismiss, as Doctor Greear had done, and the district judge entered an order on December 8, 1969, dismissing the complaint against the Hospital.

2. *The Discretion of the District Judge.*

Our role on this appeal is clear and well defined. We are simply to determine whether the district judge abused his discretion in granting the two 41(e) dismissal motions. This court, in Harris v. Harris, 65 Nev. 342, 350, 196 P.2d 402, 406 (1948), has laid down the standard that must govern our ruling in this appeal:

". . . Unless it is made to appear that there has been a gross abuse of discretion on the part of the trial court in dismissing an action for lack of prosecution its decision will not be disturbed on appeal. Raine v. Ennor, . . . 39 Nev. 365, 374, 158 P. 133; Inderbitzen v. Lane Hospital, . . . 17 Cal.App.2d 103, 61 P.2d 514, 516; Cohn v. Rosenberg, 62 Cal.App.2d 140, 144 P.2d 399, 401; Allyne v. Murasky, . . . 200 Cal. 661, 254 P. 564, 566; Brown v. Haymore, . . . 43 Ariz. 466, 32 P.2d 1027, 1028; Hicks v. Bekins Moving & Storage Co., . . . 9 Cir., 115 F.2d 406, 409; Pennsylvania Railroad Co. v. City of Pittsburgh, 335 Pa. 449, 6 A.2d 907, 911; Bancroft's Code Practice and Remedies, vol. 1, page 758, sec. 506, note 10; and 10-year supplement, vol. 2, pages 1581, 1582, note 12." See also Volpert v. Papagna, 85 Nev. 437, 456 P.2d 848 (1969), wherein this court last year, in a unanimous opinion, approved the Harris standard.

We have reviewed the record in this case, and it does support the rulings of the district judge. There was no abuse of discretion in granting the orders of dismissal. Indeed, a recent decision of our sister state, California, has held, under facts similar to the instant case, that the court's *refusal* to dismiss

constituted an abuse of discretion. In Paul W. Speer, Inc. v. Superior Court, 77 Cal.Rptr. 152 (Cal.App. 1969, *hearing denied,* Cal. 1969), the appellate court issued a peremptory writ of mandate to the judge who had denied the motion to dismiss for want of prosecution under the 2-year discretionary rule and said, 77 Cal.Rptr. at 155:

". . . In Black Bros. Co. v. Superior Court, supra [71 Cal.Rptr. 344 (1968)], the facts were very similar to the instant case. The complaint was filed on January 22, 1965, and service was not made on the defendant until January 9, 1968. That court decided that the trial court '. . . abused its discretion in denying motion of defendant to dismiss.' In Anderson v. Nawa, 25 Cal.App. 151, 154, 143 P. 555, 556 [1914], the court held that: '. . . the unexplained and inexcusable failure to serve the summons within two years and ten months . . . *prima facie* constituted good and sufficient grounds of dismissal.' (See also Sprajc v. Scandinavian Airlines System, Inc., *supra* [50 Cal.Rptr. 181 (1966)], affirming a dismissal under section 583 where the complaint was filed on July 24, 1961, and service was not made on the defendant until August 13, 1963.[)]

"On the record before us we find there is an absence of any showing constituting good cause. Since the plaintiff in this case has not met his burden of showing 'excusable delay,' the trial court had a duty to dismiss the action upon the motion of petitioner. The failure to do so was an abuse of discretion.

"Let the peremptory writ of mandate issue as prayed."

The purpose of the 2-year discretionary power of dismissal is to compel reasonable diligence in the prosecution of an action after it has been commenced, so that the parties against whom it is brought will have an opportunity to properly present any defense that may be available at the time of the commencement of the action. It is the duty of the plaintiff to act, and to act with reasonable diligence, and a defendant need make no move until the law requires him to do so in response to the movements of the plaintiff at the various stages of the litigation.

It is the general policy, as declared by the courts, that where a plaintiff exercises reasonable diligence in the prosecution of his action, the action shall be tried on the merits. This policy is counterbalanced, however, by the policy that, when a plaintiff fails to exercise reasonable diligence in the prosecution of his action, it may be dismissed by the district judge. When the

defendant has made a prima facie showing of unreasonable delay in serving the summons and complaint, it is the plaintiff's duty to show circumstances excusing his tardiness.

Hassett chose not to testify at either hearing on the 41(e) motions to dismiss. He submitted an affidavit that in essence charged four attorneys of the Washoe County Bar with whom he had discussed his case at one time or another with negligence in not prosecuting it.[1] It is upon this naked assertion that the dissenting opinion blames members of the bar for failure to proceed diligently and would therefore reverse the orders of the district court granting the 41(e) motions to dismiss. We disagree with the reasoning of the dissenters. We must presume from the record that no one involved with Hassett's case believed it had merit. On March 2, 1967, one day before the statute of limitations would have run, it was given a case number by court order, under the practice in Washoe County. Next, a "complaint-letter" was sent, on September 6, 1967, to the Joint Screening Panel of the Washoe County Medical Society and the Washoe County Bar Association, charging Doctor Greear with professional negligence. A hearing was held by that board on December 12, 1967, and the board concluded that there was no possible basis for the negligence charge. It was at that hearing that Doctor Greear learned that a complaint in district court had been filed against him. He asked at that time, through his counsel, and several times thereafter that he be served. He never was served, and so, 4 years after the act of negligence allegedly occurred, and 2 years after the complaint had been filed against him, Doctor Greear filed his 41(e) motion to dismiss for want of prosecution.

Under the state of this record, it was within the permissible limits of the court's discretion to dismiss the action. Every man is entitled to his day in court, but a law suit is not a unilateral affair. The rights of all parties to the litigation are involved. One who is charged with a complaint and against whom substantial damages are sought is entitled to a determination of those issues within a reasonable time. That is the purpose of 41(e). Likewise, it is categorically unfair and unrealistic to brand members of the bar as "recalcitrant" in this case on the naked charge that they failed to prosecute Hassett's case and that this resulted in Hassett's prejudice. To do so would mean that any attorney who reviews a case and fails to prosecute it is *ipso facto* guilty of malpractice. The inference apparent in this case is that not one but several members of the bar

---

[1]Present counsel did not represent Hassett when he filed his complaint.

concluded, after reviewing the matter, that the complaint was without merit.[2]

Applying the standard this court announced in Harris, supra, and approved in Volpert, supra, we conclude that the district judge did not abuse his discretion in granting the 41(e) motions for dismissal. We therefore affirm the orders dismissing the complaint against the respondents.

COLLINS, C. J., and THOMPSON, J., concur.

ZENOFF, J., and BATJER, J., dissenting:

We do not dispute the generalization of the majority opinion that the trial court has a wide discretion to dismiss actions provided there is no abuse of that discretion. Harris v. Harris, 65 Nev. 342, 350, 196 P.2d 402 (1948), relied upon by the majority adds, however, that "The discretion to be exercised, under the circumstances of the particular case, is a legal discretion, to be exercised in conformity with the spirit of the law and in such a manner as to subserve and not to impede or defeat the ends of substantial justice." That case goes on to say that "unless it is made to appear that there has been a gross abuse of discretion on the part of the trial court in dismissing

---

[2]Nevada Supreme Court Rule 203 provides:

*"Rule 203. Canons of Professional Ethics of the American Bar Association adopted.* The Canons of Professional Ethics of the American Bar Association, as amended, and as interpreted by the numerical opinions of the standing committee on professional ethics of the American Bar Association, are hereby adopted by reference and made additional rules of professional conduct of the state bar, insofar as they are not in conflict with the rules of professional conduct herein."

Canon 44 of the Canons of Professional Ethics of the American Bar Association provided:

*"44. Withdrawal from Employment as Attorney or Counsel.*

". . . [T]he lawyer may be warranted in withdrawing on due notice to the client, . . . when . . . [he] discovers that his client has no case . . ."

The Canons of Professional Ethics have been superseded by the Code of Professional Responsibility adopted by the American Bar Association effective January 1, 1970. In the new Code, DR 2–110(C)(1)(a) also provides:

"(C) Permissive withdrawal [from employment].

". . . [A] lawyer may not request permission to withdraw . . . unless . . . :

"(1) His client:

"(a) Insists upon presenting a claim or defense that is not warranted under existing law . . ."

an action for lack of prosecution its decision will not be disturbed on appeal." The focus of this dissent is directed to what we believe to be the trial court's gross abuse of discretion.

In the order of dismissal the trial court ruled that the delay was caused by the plaintiff himself and that no reasonable or valid excuse for the delay was shown by Hassett. The facts belie that ruling. Hassett was compelled to hire four attorneys before he could get any action. On February 28, 1967 he retained Attorney No. 1 who filed the complaint on March 2, 1967. From that point to February 1968 Hassett solicited this attorney with letters and phone calls seeking information as to what was being done on his case. He gave his attorney money for depositions which were never taken. After considerable lapse of time Attorney No. 1 turned the case over to Attorney No. 2 who did nothing concerning it for several months and then advised Hassett that he must refuse the case for certain personal reasons.

In June of 1968 Attorney No. 2 transferred the case to Attorney No. 3 without Hassett's knowledge. Late in 1968, getting no satisfaction from Attorney No. 3, Hassett retained Attorney No. 4. Together they drafted interrogatories which were not served because, as was explained to the trial court by Attorney No. 4, Hassett had to spend some time in New York for treatments for the ailment which is the basis for his lawsuit. Once the complaint was finally served upon the hospital it filed an answer. Then came the motion to dismiss.

Throughout the entire chronology it seems glaringly apparent that the client did all that he could be expected to do but that he met the common failing of busy attorneys of procrastinating to the last degree. On very similar facts, the granting of a motion to dismiss was reversed in Johnson v. Westland Theatres, 187 P.2d 932 (Colo. 1947).

When a case has long been neglected and no adequate excuse is offered for the neglect, an inference arises that the case lacks merit, and a party whose case is dismissed for lack of prosecution and who seeks an appellate court to reverse the order of dismissal must see to it that the record contains something substantial which will justify a reversal. Northern Ill. Corp. v. Miller, 78 Nev. 213, 217, 370 P.2d 955. The "something substantial" in this case is the clearly erroneous conclusion by the trial court that the client was at fault. The fault lay solely in the hands of three dilatory attorneys who instead of rejecting the case at the outset misled the client who is not expected to know about such things as motions to dismiss and statutes of limitation.

The policy of the law is to try cases on their merits. Adams v. Lawson, 84 Nev. 687, 689, 448 P.2d 695, 696 (1968). Dismissal may be what counsel deserves but the client deserves a little better. Sykes v. United States, 290 F.2d 555 (9th Cir. 1961). It serves no purpose to dissect each case relied upon by the majority, such as, Anderson v. Nawa, 25 Cal.App. 151, 154, 143 P. 555, 556 (1914), where the court based its determination on the unexplained failure to prosecute. Each case must rest upon its own facts and circumstances. In this case Hassett was blamed by the trial court for the delay but the record shows otherwise. He was not responsible for the delay in the prosecution of his lawsuit. Rather, despite his repeated efforts, his attorneys delayed. Although the general rule is that the client is responsible for the neglect of his attorney, respectable authority holds that this is not necessarily so when the neglect is the attorney's failure to press the action. Daley v. County of Butte, 38 Cal.Rptr. 693 (Cal.App. 1964); Manson v. First National Bank, 77 A.2d 399 (Pa. 1951); see also the collected cases in 15 A.L.R.3d 674, § 12, and dissenting opinion in Link v. Wabash Railroad Co., 370 U.S. 626 (1962). By his efforts in seeking other counsel, his persistence upon each of them with letters and telephone calls, and his taking the file to opposing counsel to attempt at least to discuss his lawsuit, Hassett exercised the reasonable diligence deemed desirable in Black Bros. Co. v. Superior Court, 71 Cal.Rptr. 344 (1968), also relied upon by the majority.

To force a litigant to bring an action for malpractice against recalcitrant attorneys is burdensome and unfair. He should not have to suffer through the obstacles of a lawsuit against his lawyers. The lawyer's license carries the assurance that a litigant will not be prejudiced because of his lack of knowledge on how to proceed to enforce his rights. What he seeks is his day in court and if he does not get it, the reputation of the courts and bar is severely and unnecessarily damaged.

We dissent.